We are ready to hear arguments in our first case, EEOC v. Roark-Whitten Hospitality, case number 20-2023. We're ready to hear from the appellant. Thank you, Your Honor. Good morning. May it please the Court, my name is Anne-Noelle Aquilino, and I represent the EEOC as appellant. I'd like to try to reserve three minutes of my time for rebuttal. You'll have to watch your own time. Yes, Your Honor, and I will definitely pay attention to that. Thank you. Now, the appellees raised a number of issues in their briefs on appeal, but the issues before you today are actually quite straightforward. There are only two of them. The first is whether the district court erred in granting the motion to dismiss our successor liability claims against JYE and SGI based on its view that we failed to adequately plead the notice factor of the nine-factor test for successor liability. The second issue is whether the district court abused its discretion in awarding only $35,000 total in compensatory damages for the 11 agreed individuals when we offered evidence of significant and long-lasting emotional and even physical harm that they suffered while they were employed at Rourke-Whitten. I know my time is short, and I'm happy to start with either issue if this Court has a preference. If you don't have a preference at the outset, I'll just jump into the successor liability. Go ahead. Successor liability, of course, is an equitable doctrine. The Supreme Court adopted it in the labor context, understanding that a purchaser may not have engaged in wrongdoing, but thinking that the policies underlying there, the National Labor Relations Act, warranted it out of fairness to the victims of violations of labor law. EEOC v. McMillan, of course, is the Sixth Circuit seminal decision that adopted it under Title VII and said that the primary consideration of the successor liability doctrine is to ensure that victims receive full relief for violations of their rights. Now, this is a case that really cries out for the successor liability doctrine. We have a sanction-based default judgment against Rourke-Whitten based on the discrimination and retaliatory discharges at his hotel, but Rourke-Whitten has represented below and represents in this Court that it has no assets, it's not conducting business, and it can't pay. That is the reason why the EEOC has struggled for several years in this litigation to hold JAI and SGI liable as successors to ensure that these victims receive some relief. Now, the district court here, it was Judge Kelly sitting by designation, ruled that we had insufficiently pled just one factor of the nine-factor test. That was the sole reason for his dismissal of our lawsuit. We respectfully believe that Judge Kelly erred here, and we have three reasons to support that. The first is he erred in essentially turning the nine non-dispositive factors from the McMillan test into pleading requirements. Now, this Court recognized in Colleen v. United Airlines that, as the Court said in Skrupowitz, the Supreme Court, it's unnecessary for a plaintiff to plead each of the elements of a prima facie case in a complaint to overcome a motion to dismiss. Likewise, applying that logic and reasoning here, we think it's a reversible error to just one factor of the nine-factor test when none are dispositive. Now, our second reason is... Well, is notice dispositive? It is not always required, Your Honor. It is not dispositive. The appellees have said that this is not a serious argument that the EEOC brings today, but it is a serious argument, and we cited three different cases that found that it would be appropriate to impose successor liability even in the absence of notice. One is the Gaines case. The second is EEOC v. 786 South. Even the second decision said that notice was not dispositive, and the third was the recent decision we cited in our 28-J letter, the Hart case, from a district court within the Tenth Circuit. But even if you were to find that notice... Counsel, before we leave that question, would you agree that notice, if not dispositive, is the most important factor, or one of the most important factors? I agree that it is important and critical, but I think it is on a par with the other factor of great importance, which is the predecessor's ability to pay. And when you closely read these decisions that talk about how important both of these factors are, I think what they really suggest is that it would be inappropriate to impose successor liability in the absence of both factors. In this case, we have clear evidence, a clear representation that the predecessor, Rourke Whitten, was not dispositive. So that is my answer about notice. But even if you were to agree with that... Counsel, where do we find the evidence of inability to pay, exactly? Well, Rourke Whitten sent a letter to the district court in October of 2017, after it was ordered to obtain counsel, stating that it was broke and offering to settle this matter for $35,000, if it could obtain a bank loan. But on appeal, I think that you can find evidence of that right in the statement of ownership that precedes the Appley's brief for Rourke Whitten and Jive, says that they have no assets and they're not conducting any business. But aren't we just supposed to be looking at the complaint? This is a sufficiency of the complaint, isn't it? Well, our complaint did allege that the predecessor was unable to pay. That's in our complaint as to SGI and to Jive. It's a specific allegation. I don't have it right in front of me which paragraphs we allege that. I understand your point. And actually, you're also underscoring another point that we made in our brief, which is that we really need discovery to figure out whether success or liability is appropriate in any case. To dismiss at the motion to dismiss states is premature because we don't have all of the facts before us. Does your complaint allege notice? Yes, it does allege notice. It alleges notice that Jive had notice and alleges specifically as to SGI constructive notice. You seem to be on board with the idea that constructive notice suffices. And if you'd like, I can go through the allegations and the complaint as to each appellee. Well, could you, counsel, you're grouping Jive and SGI together. Could we take them apart for a second? Did you allege in the complaint how Jive could find information about the EEOC charges? We did not specifically allege that Jive could have done an internet search as we did for SGI. But the allegations in the complaint do give rise to a reasonable inference. The discovery would have yielded evidence that satisfies a constructive notice standard. We allege that the charges have been filed that we had issued in 2013 are reasonable cost finding to work with. Counsel, how does that give notice? Don't you have to allege facts that Jive was on notice? Not that discovery would show that Jive was on notice. The complaint needs to allege that. Well, I have to, Your Honor, disagree a little bit and say that courts have recognized that it's difficult for a plaintiff at the pleading stage to know what are the facts that we actually show notice because those are within the purview of the purchaser and the successor of the company. So we don't have all the facts about notice when we come to court and file our complaint. But I thought you alleged flat out that Jive did have notice. We did allege that this allegation in our complaint. And we cited case law, Your Honor, holding that where the charges have been filed, EUC charges have been filed. That's going to be sufficient to establish a due diligence standard of constructive notice because we can expect that through the exercise of reasonable diligence, through the exercise of due diligence, that the purchaser would have the charges. I thought for Jive you were relying on actual notice. It could have. We focused our briefs on constructive notice, I think, because alleged in your complaint. Just notice we didn't specify actual versus constructive. And had we ever been able to take the depositions of Dave Patel and Larry Witten, we may have found out indeed that there was actual notice that they had discussed it. I acknowledge that Larry Witten has said in discovery responses that he didn't disclose to Patel, Dave Patel, anything about the charges. But we never had the opportunity to depose them. If you recall, the procedural history of the case was that the first judge assigned, Judge Armijo, said that we had adequately pled successor liability, including us to notice. And Jive never disputed notice until 2019. So if we peel back, she said that we pled that adequately and we started discovery. The summer of 2017, we tried to depose Patel and Witten. But that's when they stopped communicating with their counsel and their counsel withdrew. And that's when this litigation really came to a standstill as to Rourke Witten and as to Jive. So we do think that the allegations in the complaint are sufficient as to Jive, because we pled that the charges were filed, the reasonable cause finding, the failure of conciliation. We said that we identified Dave Patel as the person who's a registered agent. And through him, he had notice. Now, the allegations as to SGI. Well, just could you clarify one thing for me in terms of the timeline? Was the federal court case pending when Jive purchased the hotel? No, the charges were filed. But the purchase occurred prior to our complaint. OK. And when you're talking about charges, you're talking about the charges in the administrative process, not in the federal court case. That's correct. I'm talking about the charges of discrimination filed with the Equal Employment Opportunity Commission. OK. And we cited several cases that hold that where charges are pending, that is sufficient to satisfy the constructive notice standard. So you want a rule in this court, Your Honor. This is why you want the rule, because you want purchasers to ask about potential liabilities. Sellers have no incentive to disclose liabilities, right? It's just going to decrease the value of the property. It's a $2.3 million hotel. So you want a rule that encourages the purchaser to ask, are there any potential liabilities that I should know about? So that's what underlies the rule. And we think that we established a plausible claim as to notice against Jive. But I understand that Your Honor is having a little bit of trouble coming along with me in that argument. In our brief, we said, if you were to disagree that our complaint plausibly alleges notice as to Jive, it should be remanded. And we should have the opportunity to re-plead and amend our complaint. Now, Jive on appeal says, hey- Counsel, Counsel, did you ever ask for leave to amend your complaint after Jive was dismissed? After Jive was dismissed, Jive wasn't dismissed until after the Rule 55B. I understand. But did you ever ask the district court for leave to amend? We did not specifically file any pleading asking to amend as to Jive. Why should you have an opportunity to do it now? You could have filed a motion. You could have filed a Rule 59 or Rule 60 motion for leave to amend. I'm not sure why we didn't do that below. But to go back through the lawsuit- Counsel, I'm asking if the law precludes us from doing what you're asking us to do. I don't believe that Jive raised on appeal any argument that we had forfeited or waived our opportunity by failing to file a motion after the Rule 55B hearing. But certainly, our first argument is that the second amended complaint as it stands sufficiently alleges notice as to Jive. I see that I have three minutes left. And I'd like to reserve that for rebuttal unless you have any other questions for me right now. Well, you haven't touched on the damages issue. And I think we need to hear from you on it. Why is the damage award of $35,000 an abuse of discretion when you didn't present any live testimony at the default hearing or medical opinion evidence? We didn't need to present live testimony. We cited the Jackson case that said that we can establish damages just based on affidavits. If you recall- No, I understand. But why is it an abuse of discretion for the district court to award the $35,000 given that you didn't present that type of evidence? Well, respectfully, that is not the reason the district court gave for the low award. It wasn't that Judge Kelly said, I'm only awarding $35,000 because you didn't call anybody to testify. He only gave two reasons for the low award. One was the short duration of time that these people work for Larry Witten. And the second was his view that there was an obvious business need for the no Spanish policy. Respectfully, both of those are infirm justifications for the award here. Let me just highlight for you two people. I know that my time is ticking. Maria Tafoya was 19 years old when she worked at the hotel. She also lived at the hotel. Counselor, we have the declarations, but I'm interested in the business need justification. What was wrong with that? The problem with that is that goes to liability. It doesn't go to damages.  Did you make an argument? Did the ESC make an argument in district court that that was an error on the part of the judge to rely on the business necessity rationale? We did not file anything after the findings of facts and conclusions of law. But our attorney certainly argued at the hearing that this had all been settled by the default judgment. So liability had been established for the hostile work environment and the retaliatory discharges. The only question of the Rule 55B hearing was what was the harm that was caused? And what should the damage award be? The cap is $50,000. And I submit to you that although they worked there for two months, the abuse of discretion was not crediting their testimony, that the emotional harm was significant and severe. Kathy Archuleta, the general manager, said she would literally vomit every day. Well, before we get into the weeds of that, I've been curious all along as to how we ended up with the default judgment going away. Was there a motion to vacate the default judgment? There was never a motion to vacate the default judgment. So the default judgment came down in 2017. And for two years, Jai and Mark Whitten had no counsel. Then, as you probably recall, this case was reassigned from Judge Armijo to Judge Vasquez to Judge Kelly. When Judge Kelly received the case, he, sui sponte, decided to set aside the default judgment based on his view that we insufficiently fled the notice factor. So we have to challenge that. Was that ever noticed? That is, was there a hearing on the setting aside of the default judgment? No. If I may answer, Your Honor, I see my time is out. But what the hearing was, the notice that we received from Judge Kelly of the hearing was the Rule 55B hearing would be on relief. We never received any notice that he was going to expand the hearing to reconsider the merits or the allegations in the complaint. We made that point in our brief. And we cited a case to support that he should have given us notice. So Jai and Mark Whitten filed a brief the same day we filed a pre-hearing brief mentioning it. But Judge Kelly himself never warned us that he was going to reconsider it. And we focused, rightfully, justifiably so, on the damages. Yeah, thank you. We're ready to hear from one of the appellees. You'll need to turn on your audio, sir. Thank you. May it please the court. I'm Paul Fry. I represent SGI LLC. SGI is conceitedly an innocent party joined solely for the purpose of providing a pocket, however shallow, for the EEOC. I'll start with addressing one, the first comment, actually, of counsel for EEOC, correctly saying that this is an equitable doctrine. And I'd like to go straight to the Rojas decision that everybody has cited, which says, quote, it would be unjust to impose liability upon a successor for the mere purpose of enhancing the plaintiff's ability to collect a money judgment. The EEOC has conceded three key points that we raised in our brief by failing to address them at all. The first one is that the entire doctrine of successor liability is predicated on there being a sudden change in the employment relationship of the aggrieved parties. My client bought this hotel seven years after every one of these allegedly aggrieved employees left the employment. There was no sudden change there. There couldn't have been a sudden change. And conversely, my client couldn't have possibly benefited from the alleged discriminatory conduct of Witten. And when you look at the McMillan case upon which Trujillo is based, McMillan says, if there is no benefit to the successor, then the equities do not favor liability. What do we do with due diligence in this case? I think that it's probably on this appeal, perhaps premature to address it. The question is, was notice, including constructive notice, properly alleged in the fourth amended complaint? And Judge Kelly correctly found that it was not. There certainly was no allegation of actual notice. And the EEOC knows that my client had no actual notice. It made a series of... But as a subsequent purchaser, did you not have the ability and maybe even the requirement of due diligence to determine what the status of the predecessor owner was? That is, if there was outstanding liability. I think when we get to the merits, if we ever do get to have to get to the merits, yes, we have a responsibility to do adequate, reasonable due diligence. And we did it. Doesn't due diligence go to constructive notice here? That is, what was your position? What did you know? How much time did you have for due diligence under your purchase contract? And what did you do to satisfy due diligence? Well, the purchase contract, I believe, gave us 30 days of due diligence. And during that time, our broker, whose name is Hazen, was in touch with the broker for the seller, and we investigated the property. We determined that it was being badly mismanaged and run down. And our broker asked their broker, is there anything else about this property that we should know about? Any unstated liabilities? And that broker told us no. And that's in our supplemental appendix that we filed with the court. But I think that's really not the issue in terms of an appeal for failure to state a claim. Well, doesn't the complaint allege that SGI, through its president, Harper, sophisticated buyer, there's a due diligence clause in the contract, there's a search for the hotel on the internet. Why isn't that enough to state a claim that SGI could have and should have discovered that the case was pending? I think, again, Judge Kelly got it right, to require a particular search engine and a search for the name of a hotel that was not being purchased. We were purchasing the El Camino Lodge. But the El Camino Lodge and the Witten Inn were both on the caption of the complaint, weren't they, in the federal case? Oh, sure. But again, Judge Kelly got it right. And I think it follows from the Supreme Court's decisions in Wiley, Golden State, and then the other cases that have been cited by the party, Brzozowski and Ramirez, and others that say there's also an interest in people being able to organize their business affairs without having to go through a needle in a haystack due diligence process. And by requiring us to go to federal district courts, state courts, every court in the country to see if there's a claim out there is unreasonable. We have a right to rely on the- How about a court in New Mexico? Well, I think it's the same principle. We shouldn't have to go to see if there's a case in the court in New Mexico when you're buying an asset. Otherwise, you know, it seems to me, Your Honor, if the filing of a complaint were sufficient to provide notice, then you wouldn't need lease pendants laws and filings because they'd be so frivolous. But don't we have in this complaint, as regards your client, a lot of allegations as to this said and did, he was in a hurry to buy because the price was really low. Wouldn't that fact of price that was really low, wouldn't that sort of set off alarm bells in most people's minds to say, hey, what's the deal here? I better check this out. Well, in our case, Mr. Harper testified that the low price could have been explained by a number of things, the main one being the rundown condition of the property. And he acknowledged that in hindsight, it could have been this lawsuit. If I may go through the other two concessions, they're key. The third, the second concession, we state that every allegation made on information and belief ought to have at least one underlying fact in there. And for all of these allegations on information and belief, what they do is they simply have a formulaic recitation of these factors. No underlying facts except for in the part alleging notice. There's not a word of protest to that argument that we've made, only that, oh, we supplied a whole lot of facts. And of course, the court can determine whether those are really facts or if they're formulaic recitations. Third concession is that EEOC cannot rely in this court on new facts or red flags or whatever they want to call these things that were not pled. And Waller is absolutely dispositive on that point. I see my time is up. And I know that Mr. Rogers has a lot of material to add. So thank you. Mr. Rogers, thank you. May it please the court. I represent Rourke Whitten, hospitality LP, as well as Jay Hanneman. And I'll be brief. You did not hear much of an argument today, nor does a brief contain any persuasive argument that there has been a clear abuse of discretion. And if you spend time on the evidence presented with regard to damages, what you will be struck with, I believe on a close look, is nothing except EEOC excesses, particularly with the expert witnesses. When you compare the affidavits of the aggrieved parties that they completed years ago to the affidavits that were presented in 2019, there are stunning differences. And what's happened is that words have been put into the mouths of these aggrieved witnesses. I'd like to emphasize the timeline. I think that's been mentioned, but it needs to be emphasized. From the very beginning in 2009, when Officer V. Hill attended a meeting of the aggrieved parties at the invitation of the aggrieved parties, and he witnessed the most undeniable insubordination and vulgar offenses possible. Counsel, could I just ask you, are you still addressing the damages issue? I can address the damages issue. I thought you started out with that. Maybe I misunderstood what you were talking about. But are we talking about the dismissal of the complaint or the damages award? Damages first, Your Honor. I wanted to address the damages didn't receive much attention today, nor in the brief. Could I just ask you a question then about the damages? Was the $35,000 compensatory award based on the amount that Mr. Whitten offered to settle? Uh, Judge Kelly did not indicate what the basis of his decision was in that. Well, okay. Well, that leads to my next question. How can we meaningfully review the damage award if he didn't articulate the basis for the award? My brief review of the EEOC decisions, reported decisions concerning damages, indicate an incredible wide array and an incredible amount of discretion to the trial court judge. I think that... Well, no, I understand that. But the EEOC is saying that the award was unreasonably low. And how do we, without the benefit of analysis from the district court, how can we evaluate that? You can evaluate that by the evidence presented at the trial court level concerning the award. I think there is significant evidence that there are no damages and that the entire claim of damages is bogus. And I think you can do that by reviewing from the beginning, Officer Vigil's account of this whole matter, as well as what happened with the expert witness. If you review the expert witnesses' statements and how that report was assembled, you're going to understand EEOC overreaching in the extreme with regard to what happened there. And the presentation... Is that the rationale that the district court used in entering the $35,000 judgment? Your Honor, I would be mistaken to speculate about the details of Judge Kelly's reasoning and all we have is the report. But more importantly, you've got a standard that the government has not remotely approached. Where is the clear abuse? Where is it? Well, if it is an abuse of discretion, if there's no basis for the award, isn't it just that simple? We have right now, I think, a number that's basically pulled out of thin air. I don't understand that there is no EEOC presentation as to damages that make sense at any other number. None. Because their evidence is simply pulled out of whole cloth as well. They had no medical testimony. They presented the live witnesses and the affidavits are materially inconsistent. If we could go back to liability in general, how was the default judgment handled? We had a default judgment at one time in this case, entered in 2017. Was there a motion to vacate the default judgment? No, Your Honor. How are we talking about liability in 2019? Your Honor, I believe we're talking about damages. The damage calculation is an equitable fairness calculation. Well, but you can't have damages without liability. Pardon? You can't have damages without liability. I thought there was a default judgment entered against Jai and your client, both of your clients. Is that not true? Your Honor, that's true. I was not representing either client. Was there a motion to vacate that default judgment? No, Your Honor. And that does not preclude the court. The court must consider a wide variety of factors in setting damages. And one of them is the veracity and truthfulness and plausibility of the evidence presented. And if there's any analysis of that, you must begin with the beginning and how this occurred. And the officer's testimony from that very first meeting in which the officer invited by the aggrieved parties testified a deposition. And I believe my time is up. May I finish? Go ahead and finish. And if you look at this timeline, if you look at this timeline and the length of time the this, and you compare the affidavits in time 2010 to the affidavits presented to the court, any rational court, any district court judge looking at that is going to come to the conclusion that testimony about damages is exceptionally shaky. And it isn't simply, as the court knows, it isn't simply. Thank you, counsel. Thank you. You're over. Thank you. Are there any questions from the panel? All right. Thank you both for your arguments, or all three of you this morning for your arguments. The case is submitted. Thank you.